**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LORI GEIMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 41 |
| ) | |
| BANK OF AMERICA, N.A., a Federally ) | Judge Rebecca R. Pallmeyer |
| Chartered National Bank, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lori Geimer brought this action for damages against Defendant Bank of America ("BOA") in connection with Defendant's alleged failure to prevent unauthorized fund transfers from Plaintiff's personal checking and credit accounts. In her First Amended Complaint, Plaintiff alleges that she received a bank statement from BOA on May 28, 2008, reflecting electronic transfers on May 14 (in the amount of $31,851.35) and May 21 (in the amount of $19,500.11) that she had not authorized. (Second Am. Compl. ¶¶ 8-10.) Plaintiff notified the bank in June 2008. (*Id.* ¶ 11.) Then on September 9, Plaintiff learned that FIA Card Services, which she alleges is controlled by BOA, had opened a credit card in her name and that an unknown user had attempted to use it to transfer funds in the amount of $64,000. (*Id.* ¶¶ 7, 12.) Plaintiff alleges that the Bank never investigated these transactions and has instead advised her that the "money was gone and could not be recovered." (*Id.* ¶ 15.)

Plaintiff's amended complaint presents a claim of breach of fiduciary duty purportedly based on the Illinois Fiduciary Obligations Act ("FOA"), 760 ILCS 65/1 *et seq.* (Count I); a claim of negligence (Count II); and a breach of contract claim (Count III). A claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, asserted in Plaintiff's original complaint, has been withdrawn. Because there is diversity of citizenship, however, the court retains jurisdiction. Defendant has moved to dismiss, arguing that the EFTA preempts Plaintiff's state law claims and

that her allegations otherwise fail to state a cause of action. For the reasons explained here, the motion is granted in part and denied in part.

## DISCUSSION

In addressing Defendant's motion, the court construes Plaintiff's allegations in the light most favorable to her and draws all reasonable inferences in her favor. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of a cause of action's elements" supported by merely conclusory statements. *Twombly*, 550 U.S. at 555. Even after *Twombly*, the federal notice-pleading standard requires that a plaintiff provide "only 'enough detail [in her complaint] to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through [her] allegations, show that it is plausible, rather than merely speculative, that [s]he is entitled to relief.'" *Reger*, 592 F.2d at 764 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

**I.    EFTA Preemption of State-Law Claims**

Defendant argues, first, that the EFTA preempts all of Plaintiff's state-law claims. (Def.'s Mot. to Dismiss Sec. Am. Compl. [hereinafter "Def.'s Mot."] ¶ 3.) As noted, Plaintiff discovered the electronic transfers in May 2008 and learned of the credit account in September 2008. Her original complaint in this action, filed in January 2010, included a claim under EFTA, but that claim is barred by EFTA's one-year statute of limitations. Plaintiff has withdrawn that claim, but Defendant urges that her state law claims must be dismissed, as well. To allow those claims to proceed, Defendant argues, would "effectively eviscerate the EFTA's one-year statute of limitations" and thereby enable Plaintiff to "get around" the Act's time bar. (Def.'s Mot. ¶ 3.)

The Electronic Funds Transfer Act establishes the "rights, liabilities, and responsibilities of participants in electronic fund . . . transfer systems." 15 U.S.C. § 1693(b). The Act's primary purpose is to provide for individual consumer rights, and to that end its preemption language is limited: EFTA expressly preempts state laws only "to the extent that those laws are inconsistent with the provisions of this subchapter," and explains that "[a] State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter." 15 U.S.C. § 1693q. This language demonstrates that "Congress did not intend for the Act to provide the exclusive cause of action for claims relating to unauthorized fund transfers"; to the contrary, "[t]he Act contemplates the application of state law that is not preempted by its provisions." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 553 (5th Cir. 2008).

Although there have been no Illinois state or federal cases interpreting this provision of the EFTA, a Missouri decision is instructive. In *Stegall v. Peoples Bank of Cuba*, a Missouri appellate court reversed the lower court's dismissal of the plaintiff's complaint and held that the EFTA—for which the statute of limitations had already run—did not preempt the plaintiff's state-law breach of contract claim. 270 S.W.3d 500, 508 (Mo. Ct. App. 2008). Plaintiff's claims in that case, as in this one, allegedly arose from a series of unauthorized electronic fund transfers from her bank account, *see id.* at 502, subject matter that falls squarely within the domain of the EFTA, *see* 15 U.S.C. § 1693(b). The *Stegall* court reasoned that the relevant Missouri state law provided plaintiffs with greater rights than EFTA because state law breach of contract claims relating to electronic fund transfers could be considered timely filed, even where EFTA claims would be barred by the Act's statute of limitations. 270 S.W.3d at 505.

In the case before this court, Plaintiff's state law claims—specifically, breach of fiduciary duty, breach of contract, and negligence—are timely under Illinois law.[1] Illinois state law thus

---

[1] In Illinois, there is a ten-year statute of limitations for breach of written contract
(continued...)

affords Plaintiff greater protection than the EFTA because the Act has a shorter statute of limitations than Plaintiff's other state law claims. *See Stegall*, 270 S.W.3d at 505; 15 U.S.C. § 1693m(g). The court concludes Plaintiff's state law claims are preserved by the express language of 15 U.S.C. § 1693q, and denies Defendant's motion to dismiss on these grounds.

## II.  Breach of Fiduciary Duty Claim

Defendant moves to dismiss Plaintiff's breach of fiduciary duty claim, which relies on the Illinois Fiduciary Obligations Act ("FOA"), on the grounds that Defendant did not owe Plaintiff a fiduciary duty and that the facts of this case do not implicate the FOA. (Def.'s Mot. ¶ 4(a).) The Fiduciary Obligations Act governs a financial institution's liability for participation in a breach of fiduciary duty by a third party. As a general rule, the Fiduciary Obligations Act shields a bank from liability, specifically providing that a bank does not have an obligation to inquire whether a fiduciary is committing a breach when it permits fiduciaries to make withdrawals, so long as the bank acts without bad faith or actual knowledge of the fiduciary's breach. *See Setera v. Nat'l City Bank*, No. 07 C 2978, 2008 WL 4425446, at *2-3 (N.D. Ill. Sept. 26, 2008). In essence, the Act provides a defense for banks when a fiduciary misappropriates his principal's funds, unless "the bank ha[d] actual knowledge of the fiduciary's misappropriation" or "knowledge of sufficient facts that its action in paying the checks amount[ed] to bad faith." *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987) (discussing the Uniform Fiduciaries Act, which was adopted in Illinois and codified as 760 ILCS 65/1 *et seq.*). The FOA does not appear relevant here, in an action where no third-party fiduciary plays a role.

The Act does apply in circumstances like those of *Continental Cas. Co., Inc. v. American National Bank & Trust Co.,* 329 Ill. App. 3d 686, 704-05, 768 N.E.2d 352, 366-67 (1st Dist. 2002),

---

[1](...continued)
claims, *see* 735 ILCS 5/13-206, and a five-year statute of limitations for both negligence and breach of fiduciary duty claims, *see* 735 ILCS 5/13-205.

cited by Plaintiff. In that case, the defendant bank allegedly acted in bad faith by paying checks to the personal account of an employee who had misappropriated funds from plaintiff, his principal. Neither that case, nor the FOA itself, provides any support for Plaintiff's contention that "Illinois courts have recognized statutory fiduciary duties relative to bank deposits." (Pl.'s Resp. at 7.)

To the contrary, under Illinois law, banks generally owe no fiduciary duty to their depositors because the relationship among the parties is no more than "an arms-length transaction between debtor and creditor." *Miller v. Am. Nat'l Bank & Trust Co.*, 4 F.3d 518, 520 (7th Cir. 1993). Likewise, the contractual relationship between a lender and a borrower is not fiduciary in nature. *See ARH Distribs., Inc. v. ITT Commercial Fin. Corp.*, No. 87 C 511, 1987 WL 17834, at *3 (N.D. Ill. Sept. 28, 1987). Illinois law does recognize, however, that the particular circumstances surrounding a given relationship may generate fiduciary responsibilities. *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). Specifically, "[t]he essence of a fiduciary relationship is that one party is dominated by the other," where the dominant party has accepted the trust of the other party. *Id.* Accordingly, to establish the existence of a fiduciary relationship, a party must show that she "placed trust and confidence" in the dominant party, and that the latter "gained influence and superiority" over her. *Id.* In making these determinations, courts look to factors such as "kinship, age disparity, health, mental condition, education, business experience, and the extent of [the party's] reliance" on the dominant party. *Id.* As the court understands Plaintiff's relationship to Defendant, however, that relationship was limited to that of either a creditor to a debtor (with respect to Plaintiff's personal checking account), or a borrower to a lender (with respect to Plaintiff's credit account), or both. Plaintiff has not suggested that she placed significant trust in Defendant or that Defendant exerted dominance over her. Illinois law does not recognize this type of relationship as fiduciary in nature. *See Miller*, 4 F.3d at 520; *ARH*, 1987 WL 17834, at *3.

Defendant's motion to dismiss Count I of Plaintiff's Complaint is granted.

**III.     Negligence Claim**

Defendant moves to dismiss Plaintiff's negligence claim on the grounds that the economic loss doctrine bars Plaintiff's recovery in tort.  (Def.'s Mot. ¶ 4(b).)  The economic loss doctrine (often referred to as the *"Moorman* doctrine") has its origins in *Moorman Manufacturing Co. v. Nat'l Tank Co.*, where the Illinois Supreme Court held that "plaintiff[s] cannot recover for solely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation." 91 Ill. 2d 69, 91-92, 435 N.E.2d 443, 453 (1982).  The court defined "economic loss" as "'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits–without any claim of personal injury or damage to other property.'" *Id.* at 82, 435 N.E.2d at 449 (citation omitted).  The rationale underlying this rule is that tort law affords the proper remedy for losses arising from personal injuries or damage to one's property, whereas contract law and the Uniform Commercial Code provide the proper remedy for economic losses stemming from diminished commercial expectations without related injuries to persons or property.  *See In re Ill. Bell Switching Station Litig.*, 161 Ill. 2d 233, 241, 641 N.E.2d 440, 444 (1994).

Illinois law recognizes exceptions to the *Moorman* doctrine.  The Illinois Supreme Court has observed that the doctrine does not bar a claim for personal injury or property damage that arises from a sudden or dangerous occurrence, for damages caused by fraud, or for harm from negligent misrepresentations made by persons who are in the business of providing information.  *See In re Chicago Flood Litig.*, 176 Ill.2d 179, 199, 680 N.E.2d 265, 275 (1997).  Moreover, the economic loss doctrine bars claims against a service provider "only where the duty of the party performing the service is defined by the contract that he executes with his client.  Where a duty arises *outside* of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 161, 636 N.E.2d 503, 514 (1994) (emphasis added).

Some Illinois cases suggest that the duties (if any) owed by banks to their depositors, or

6

lenders to their borrowers, arise only by contract. *See Continental Cas.*, 329 Ill. App. 3d at 692-93, 768 N.E.2d at 357-58 ("The relationship between a bank and its depositor is contractual in nature. . . . Implicit in such contracts is the common-law duty of the bank to use ordinary care in disbursing the depositor's funds."); *LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008) ("The Court finds that Illinois law does not . . . recognize a general duty of care owed by lenders to borrowers, especially not one that would create tort liability based on internal lending guidelines."); *ARH*, 1987 WL 17834, at *3 (emphasizing that contract defined relationship between lender and borrower). Other courts, however, appear to acknowledge that an extra-contractual duty *may* exist between banks and their depositors. For instance, the *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank* court concluded that "*Congregation of the Passion*'s rationale suggests that a bank's failure to observe ordinary care in handling its customer's transactions may support a tort claim notwithstanding [*Moorman*]" because "the law has long imposed on banks a duty of reasonable care, and that duty is so entrenched that the UCC does not permit the parties to a banking contract to abandon it." 265 F.3d 601, 618 (7th Cir. 2001) (declining to decide the question definitively) (citation omitted). *See also Rogers v. Bank of America*, *N.A.*, No. 10-cv-0375-MJR, 2010 WL 4384257, at *3-4 (S.D. Ill. Oct. 28, 2010) (denying defendant bank's motion to dismiss plaintiff's negligence claim on grounds it was barred by *Moorman* because after *Mutual Service*, the bank's failure to observe reasonable care would arguably support a negligence claim in Illinois).

Defendant BOA urges that Plaintiff here seeks to recover damages resulting from "defeated commercial expectations," a claim that BOA argues is barred by the economic loss doctrine. (Def.'s Mot. ¶ 4(b).) In response, Plaintiff contends that "[n]egligent failure to take appropriate security precautions against identity theft has been widely recognized in other states as a basis for bank liability, over and above any contractual liability which may exist." (Pl.'s Resp. at 9.) The cases Plaintiff cites do not provide obvious support for this proposition. For instance, in *Patrick v. Union*

*State Bank*, where an imposter had opened a checking account in plaintiff's name and wrote a series of bad checks, the court held that the bank owed a duty of reasonable care to a person "in whose name . . . an account is opened . . . ." 681 So. 2d 1364, 1365, 1371 (Ala. 1996). *Patrick* thus addresses a bank's duty at the time the checking account is opened, as opposed to its duty regarding existing accounts. And plaintiff in *Patrick* had no contractual relationship with the bank at all (only the imposter did), *id.* at 1369, whereas here, Plaintiff and Defendant are allegedly parties to checking and credit agreements. (Compl. ¶¶ 6-7.) Plaintiff cites *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, as well (Pl.'s Resp. at 9), but that case held only that an exculpatory clause in the defendant bank's safety deposit box rental agreement did not bar a claim that the bank breached its contractual duty to exercise ordinary care to prevent unauthorized access to the box the plaintiff had rented. 213 Ill.2d 58, 68, 820 N.E.2d 411, 417 (Ill. 2004). The court reasoned that the defendant specifically assumed this duty in the rental agreement and thus could not exculpate itself in another part of the agreement from liability for breaching that same promise. *Id.* at 65, 820 N.E.2d at 415. The lower courts in *Jewelers Mutual* had dismissed plaintiff's negligence claim under the *Moorman* doctrine, and the Illinois Supreme Court did not disturb that holding in concluding that plaintiff's contract claim could proceed

To the extent that Defendant's obligations to Plaintiff are defined entirely by contract, the economic loss doctrine bars her attempt to recover under a negligence theory. The court is nevertheless reluctant to dismiss this claim at the pleading stage in light of the *Mutual Casualty* court's suggestion that an extra-contractual duty between banks and their depositors might permit such a claim. *See Rogers*, 2010 WL 4384257, at *3. *Cf. Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 761 (N.D. Ill. 2010) (denying defendants' motion to dismiss plaintiff's negligent misrepresentation claim on grounds of *Moorman* doctrine because plaintiff's allegation that defendants owed her an extra-contractual duty to convey accurate information sufficed at pleading

stage).²

Defendant's motion to dismiss the negligence claim is denied without prejudice to renewal on summary judgment.

## IV. Breach of Contract Claim

Defendant moves to dismiss Count III of Plaintiff's Complaint on the grounds that Plaintiff failed to satisfy the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*. (Def.'s Mot. ¶ 4(c).) Plaintiff alleged generally that Defendant breached both its "checking account and electronic funds Agreement" and its "credit privilege policy." (Compl. ¶¶ 36, 38.) Notably, in its motion to dismiss and accompanying brief, however, Defendant addresses the insufficiency of Plaintiff's pleadings only with respect to the latter claim. (Def.'s Mot. ¶ 4(c); Reply in Supp. of Def.'s Mot. to Dismiss Sec. Am. Compl. at 2.) In particular, Defendant argues that Plaintiff failed to allege the existence of a contract related to the "credit privilege policy" and damages resulting from the alleged breach of that contract. (Def.'s Mot. ¶ 4(c).) Because Defendant did not address Plaintiff's claim regarding breach of the "checking account and electronic funds Agreement," that claim survives Defendant's motion to dismiss.

Plaintiff's claims regarding the "credit privilege policy" require a closer examination. Under Illinois law, a plaintiff must allege four elements to state a claim for breach of contract: "'(1) the

---

² The court's analysis ignores the *non*-economic losses Plaintiff alleged in her Complaint, including "embarrassment, humiliation, and emotional and mental pain and anguish" resulting from Defendant's conduct. (Compl. ¶ 17.) Plaintiff could—but did not—assert that these alleged damages support her negligence claim, despite application of the *Moorman* doctrine to her economic losses. At least one court has recognized an argument along these lines. Specifically, in *Elovic v. Nagar Construction Co.*, the court denied defendant's motion to dismiss a negligence claim under the *Moorman* doctrine because the plaintiffs alleged that they suffered non-economic losses in the form of "'physical injury to their persons'" due to the defendant's installation of defective windows in their home. No. 06 C 943, 2007 WL 1149205, at *9 (N.D. Ill. Apr. 16, 2007). The court reasoned (notably, pre-*Twombly*) that although the plaintiffs' allegations of physical harm seemed "far-fetched," the plaintiffs were "not required to plead their injuries in detail," and if the injuries lacked merit, the defendant could "ferret them out in discovery and move for summary judgment." *Id.*

9

existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger*, 592 F.3d at 764 (citation omitted). The court considers, first, whether Plaintiff sufficiently alleged the existence of a valid and enforceable contract between herself and Defendant in connection with her credit card account. Plaintiff asserts that she "had a credit card issued to her from FIA Card Services, [which is] owned and controlled by BOA." (Compl. ¶ 7.) Plaintiff attached to her Complaint a photocopy of Defendant's "Disclosure" document, which sets forth the "Important Terms" of Defendant's credit policy. ("Bank of America Credit Card Pre-Selected Important Terms Disclosure," Ex. B. to Sec. Am. Compl. [hereinafter "Ex. B"].) This document—which is considered part of Plaintiff's complaint for the purpose of ruling on Defendant's motion to dismiss, *see* FED. R. CIV. P. 10(c); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)—exemplifies the paperwork consumers typically receive when they open credit card accounts. The front of the document reads, "Your acceptance or use of an account means that you agree to the Conditions on page 17 of this booklet . . . and to be bound by each of the terms of the Credit Card Agreement." (Ex. B at 1.) Plaintiff has alleged that she did accept a credit card account from Defendant. (Compl. ¶ 7.) This disclosure document thus constitutes a valid and enforceable contract between Plaintiff and Defendant, and the court concludes Plaintiff has alleged the first element of her breach of contract claim.

With respect to the elements of performance by Plaintiff and Defendant's breach, Plaintiff has alleged that, upon learning of the unauthorized transfer from her credit account, she "followed BOA's instructions and procedures for reporting the unauthorized and fraudulent transfer of funds." (*Id.* ¶ 14.) Drawing all inferences in Plaintiff's favor, this assertion suggests that Plaintiff substantially performed her obligations under the credit agreement. Plaintiff asserts, further, that Defendant breached the credit agreement "by allowing a third party to draw upon Plaintiff's assigned credit line to $64,000.00 without [her] authorization." (*Id.* ¶ 38.) The court presumes these allegations are true, for purposes of Defendant's motion, and concludes Plaintiff has adequately

alleged the second and third elements of a breach of contract claim.

The final issue is whether Plaintiff has alleged damages resulting from Defendant's breach of the credit agreement. Plaintiff listed multiple types of injuries that flowed from Defendant's conduct, including: (1) "monetary losses [resulting] from BOA's unauthorized electronic transfer from her account"; (2) "unauthorized credit card charges"; (3) "out-of-pocket expenses" for long-distance telephone calls, postage, and other costs; (4) "embarrassment, humiliation, and emotional and mental pain and anguish"; and (5) "injury to [her] credit rating and reputation." (*Id.* ¶¶ 16-18.) Again, presuming these allegations are true, Plaintiff has adequately alleged harm from Defendant's alleged breach.

Defendant's objection to Count III of the Complaint is overruled.

## **CONCLUSION**

For the foregoing reasons, Defendant's preemption objection is overruled. Its motion to dismiss [28] is granted with respect to Count I (the breach of fiduciary duty claim) and otherwise denied. Defendant is directed to file its answer to Counts II and III within 14 days. A Rule 16 conference is set for April 11, 2011 at 10:00 a.m.

ENTER:

Dated: March 21, 2011

_____
REBECCA R. PALLMEYER
United States District Judge