_____

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORI GEIMER, | ) |
| | ) |
|     Plaintiff | ) |
| v. | ) |
| | )   No. 10 CV 41 |
| BANK OF AMERICA, N.A., | ) |
| A Federally Chartered National Bank, | ) |
| | ) Judge Rebecca R. Pallmeyer |
|     Defendant. | ) |

_____

### PLAINTIFF'S BRIEF AND MEMORANDUM OF LAW
### AND RESPONSE TO DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, **LORI GEIMER** (hereinafter "Plaintiff" or "GEIMER") filed her complaint against the **BANK OF AMERICA, N.A., A Federally Chartered National Bank,** (hereinafter "BOA'" or "Defendant"), Plaintiff alleging in Count I, that BOA was negligent in its handling of a credit card account and allowing funds to be transferred from both a credit card set up by BOA and her checking account with BOA, without her express authorization and Count II, BOA breached the contract of checking and credit accounts by allowing for unauthorized withdrawals from her checking and credit card accounts.

### FACTS

In 2003 Plaintiff had a credit card contract with Bank America and FIA took over in 2006 however the credit card she received still said it was a Bank America Credit Card and Plaintiff had no reason to believe that FIA was a responsible party. (PSAF #17)

Plaintiff alleged she had unauthorized withdrawals from her checking account on May 14, 2008 of $31,851.00 and $19,500.00 on May 21, 2008. (PSAF #1) Plaintiff found out that her money had been

withdrawn when she went to withdraw money from her account and found out she had no money available for a withdrawal. (PSAF #2)

Plaintiff gave notice of the unauthorized withdrawal by going to the bank physically and notifying them of those withdrawals. (PSAF #3) Plaintiff indicated that her signature was a forgery and not her signature on the unauthorized withdrawal slip. (PSAF #4)

Further, Plaintiff has stated she had a credit card that was Bank of America/FIA card, which FIA owns the Bank of America which account she opened in 2003. (PSAF#5) In May of 2008, there was $52,000.00 deposited in Plaintiff's account, which Plaintiff does have entitlement to and within the same month, $52,000.00 was withdrawn which Plaintiff claims were unauthorized. (PSAF #11)

Plaintiff acknowledged that on May 14, 2008, $32,000.00 was transferred as a deposit from FIA. (PSAF #6) On May 21 2008, $20,000.00 also was deposited into a fake account. (PSAF #7) Plaintiff denies that she had transferred $32,000.00 from her credit card #19361 into her checking account. (PSAF #8) Plaintiff did not authorize credit charges on the credit card ending with 19361. (PSAF #11) Plaintiff agrees that $20,000.00 was transferred into her checking account from her FIA credit card ending in #19361. (PSAF #9) Plaintiff was unable to return the $52,000.00 that was transferred into her checking account because her checking account was fraudulently taken over. (PSAF #10)

In 2007/2008, Plaintiff was notified that someone had fraudulently accessed her credit card account and then issued another ending in 1008 by Harris Bank which then combined 13 different credit cards which Plaintiff had not authorized. (PSAF #13)

Plaintiff believed that because of the fraudulent use of her name in opening up 13 credit cards it violated the duty of the bank to protect her and caused her credit score to plummet from 850 to 0. (PSAF #14) Plaintiff believed that BOA breached its duty to her by the fact she lost all her money she had in her checking account. (PSAF #15)

2

Although Plaintiff never had to pay the credit card charges of $64,000.00, her credit reputation and her credit rating were still damaged. (PSAF #16)

Plaintiff denies that she authorized and transferred $32,000.00 on May 14, 2008 and May 21, 2008 from the Credit Card ending in 19361 into her checking account. (PSAF #18) Further, Plaintiff denies opening up a FIA credit card with the last numbers of 19361. (PSAF #19)

### I.     STANDARD FOR MOTION FOR SUMMARY JUDGMENT.

To prevail on a motion for summary judgment, the Defendant must identify the relevant portions of pleadings, depositions, answers to interrogatories, and other admissible evidence which demonstrate that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, then the responding party must present specific facts that create a genuine issue for trial. Id.; *Fed. R. Civ. P.* 56(e). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986): *Bay v. Cassens Transport Co.*, 212 F. 3d 969, 972 (7th Cir. 2000). Summary judgment is not favored if issues of intent, good faith, or subjective feelings play an important role in determining the issues because these issues are usually not capable of being resolved by summary judgment. *White Motor Co. v. United States*. 372 U.S.253, 259 (1963); *Kephart v. Institute of Gas Technology,* 630 F. 2d 1217, 1218 (7th Cir. 1980); Beard v. Whitley County REMC, 840 F. 2d 405, 410 (7th Cir. 1988).

In *Sischo-Nownwjad v. Merced Community College*, the court explained that the plaintiff need only show that discrimination played a motivating part in the adverse action. 934 F. 2d 1104, 1110 (9th Cir.). The plaintiff needs "very little" evidence for a prima facie case. Id at 1110-11. When the plaintiff raises more evidence than is needed for a prima facie case, summary judgment should normally be denied even if the employer articulates a non-discriminatory reason for its actions because the plaintiff will "necessarily" have raised a genuine issue of fact as to the validity of the

3

defendant's articulated reason. Id at 1111. Plaintiff may also submit additional evidence strengthening the inference of discrimination from the prima facie case in order to prove pretext. See *Texas Dept. of Commercial affairs v. Burdine,* 450 U.S. 250, 252-53 (1981); *Norris v. Baxter Health Care,* 49 F.E.P. 176, 177 (N.D. Ill. 1988). Pretext can be proven by showing that the defendant's articulated reason did not actually motivate its decision, that the articulated reasons have no basis in fact, or that the alleged reasons were insufficient to motivate actions against plaintiff. *Collier v. Budd Co.*, 66 F. 3d 886,892 (7th Cir. 1995).

## ARGUMENT

   1. FIA Card Services was not needed as BOA's own form show that Plaintiff was to believe she was dealing with BOA not FIA, as FIA was only a disclosed agent. If an agency is disclosed in the name of the principal, the agent is not liable on the contract unless he agrees to become personally liable. *Chicago Title & Trust Co. v. De Lasauy,* 336 Ill. 522, 526, 168 N.E. 640, 642 (1929); *Clark,* 118 Ill. App. 3d at 548; *Gateway Erectors Div. of Imoco-Gateway Corp. v. Lutheran Hospital,* 102 Ill. App. 3d 300, 301, 430 N.E.2d 20, 22 (1st Dist. 1981); *Zamouski,* 1 Ill. App. 3d at 896. Defendant's own document would confuse anyone if BOA was attempting to make a debtor believe that BOA isn't responsible for the credit account but only FIA. (See Def. Tab 8)

   It is well established that the duty of good faith and fair dealing is implied in every contract. Its purpose is to insure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract formed or do anything that will destroy the other's party right to receive the benefit of the contract. Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. The duty of good faith and fair dealing is a limitation on the exercise of that discretion, requiring that the party vested with discretion exercise it reasonably and with proper motive, not arbitrarily, capriciously or in a manner inconsistent with the parties' reasonable expectations (See *Jack Gore v. Indiana Insurance*

4

*Company,* 376 Ill. App.3d 282 at 286, 876 N.E.2d 156 at 161, 2007 Ill. App. LEXIS 978, 315 Ill. Dec. 156 at 161, 162).

2. BOA then implies that because of Plaintiff's receipt of some benefits from actions of a third party, that somehow she is bound by those actions.

Implied authority, as opposed to apparent authority, differs in that apparent authority flows from the acts of a principal and is distinguished in the case law from implied authority, which is derived from circumstantial evidence. Apparent authority, or authority by estoppel, arises when a principal, through words or conduct, creates a reasonable impression that the agent has authority to perform a certain act. Implied authority, on the other hand, is defined as actual authority circumstantially proved and is regarded as authority implied by facts and circumstances. *Devers v. Prudential Property & Casualty Insurance Co.* 86 Ill. App. 3d 542, 545-46, 408 N.E.2d 462, 465 (5th Dist. 1980).

Contractual limitations on suit are disfavored by courts, so where there is any ambiguity, they are to be construed strictly against the drafter (See *Michigan Avenue Bank of Chicago v. Evans, Inc.,* 176 Ill. App.3d 1047 at 1059, 531 N.E.2d 872 at 880, 126 Ill. Dec. 245 (1st Dist, 2 nd. Div. 1988).

Last, the statement of BOA that Plaintiff has refused to return the monies deposited in her account is without merit. Plaintiff in her Responses to BOA's specifically refute and deny that she was aware of funds transferred and believed the money transferred to National came from her husband Kevin. (Plt. Response to Def. Rule 12 & 14(sic)

3. BOA then argues that there is no breach. Because Plaintiff has alleged that a credit reporting agency received her information from the BOA, the court can conclude that her claim for damage to her credit rating does have a claim. *See Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809. (N.D. IL. 2001) Plaintiff, because of the fraudulent use of her name in opening up 13 credit cards it violated the duty of the bank to protect her and caused her credit score to plummet from 850

5

to 0. (PSAF #14) Plaintiff believed that BOA breached its duty to her by the fact she lost all her money she had in her checking account. (PSAF #15) Due to all that aggravation that Plaintiff went through she has alleged pain and suffering (Plt. Comp. ¶17) and did identify medical doctors in her response to BOA's Tab 7, Third Request to Admit or Deny, ¶6.

4. BOA then reverts again to attacking Plaintiff's monetary damage claim as a negligence claim in tort in order to argue the *Moorman Doctrine* as a bar to the recovery of damages for solely economic losses an "action for tort, including negligence". BOA cites three cases, including *Moorman Mfg., Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 82, 435 N.E. 443 (1982), where in each case the court found the cause of action "not recoverable in tort" for purely economic losses. Notwithstanding the fact that Defendant truncated the definition of economic loss from, and applicability of, *Moorman* (omitting "---without any claim of personal injury or damage to other property", *ibid,* at 449), Plaintiff's cause of action lies in contract, not in tort, and Plaintiff's recovery of her economic losses is available to her in contract. In *Meyers v. Woods*, 374 Ill. App.3d 440, 448, 871 N.E.2d 160, 168 (3rd Dist. 2007), the Meyers court observed that the parties to the action at had been "mixing up [issues] of tort and contract theory (*ibid,* at 448). In deciding the case, the Meyers court found that "The defendant is mistaken when he seeks to assert that the cause of action is a tort based theory of recovery, where plaintiff is suing the defendant for not performing the contract in a workmanlike manner" (*ibid,* at 449).

## CONCLUSION

The issue of material fact required by *Rule 56(c)* to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Fed. R. Civ. P. 56 (c)* provides that, when a properly supported motion for summary judgment is made, the adverse party must set

forth specific facts showing that there is a genuine issue for trial. The Court has held that "merely attaching exhibits. . . is inadequate to establish or contradict the fact(s) subject to dispute." *Fedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1069 (8th Cir. 2005) (citing *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1085 (8th Cir. 1999).

In considering a motion for *partial* summary judgment, there is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is the need for a trial whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

The key to determining whether a *partial* summary judgment is proper is ascertaining whether a genuine issue of material fact exists. *Rice v Snow,* 2006 U.S. Dist. LEXIS, 19139, citing, Anderson v. Liberty Lobby, Inc.*,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d202 (1986). A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *Am. Acad. of Family Physicians v. United States,* 75 A.F.T.R.2d (RIA) 1709 (W.D. Mo. *1995),* affd 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). In this cause, the Defendant has not met this burden.

It is clear from the Declarations submitted by the Defendant that was based upon the subjectivity of the declarants. Plaintiff argues that subjectivity can be motivated by a variety of stimuli and, without proper examination, it would be impossible for the Court to determine the true motivations of the declarants. Whether or not the criteria used by the declarants was discriminatory or non-discriminatory is a matter to be determined by jury at trial.

Defendant's motion for *partial* summary judgment cannot rest upon the mere denials of Plaintiff's pleadings, but must forth specific facts showing that there is no genuine issue for trial. In

7

the case at bar, the Declarations submitted in support of Defendant's motion for summary judgment contain nothing more than denials No real evidence has been submitted that would preclude a jury finding of discrimination on the part of the Defendant.

Finally, due process requires that the plaintiff be afforded the opportunity to examine these witnesses before a trier of fact. The declarations presented by the Defendant in support of its motion for *partial* summary judgment present no clear evidence of the appropriateness of their decision. The declarants present no clear evidence of non-discriminatory criteria actions against the Plaintiff.

To grant *partial* summary judgment in this cause, it would necessary for the Court to weigh the evidence presented by the parties, thereby effectively depriving one of the parties the right to due process of law.

                Respectfully Submitted,
                  LORI GEIMER

             /s/Michael T. Smith
               Michael T. Smith
               Attorney for Plaintiff
               440 W. Irving Park Road
               Roselle, Illinois 60172
               847-895-0626

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on July 16, 2012, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of this filing of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment to the following:

    Lawrence M. Benjamin
    Neal, Gerber & Eisenberg LLP
    Two North LaSalle Street
    Suite 1700
    Chicago, Illinois 60602

                                        BY:s/Michael T. Smith
                                                Michael T. Smith

Michael T. Smith #6180407IL
Attorney for Plaintiff
440 W. Irving Park Road
Roselle, IL 60172
(847) 895-0626